## PORTER v. BUCKLEY et al.

### (Circuit Court of Appeals, Third Circuit.   September 5, 1906.)

### No. 23.

1. WRIT OF ERROR—REVIEW OF RULINGS—NECESSITY OF EXCEPTIONS.

The basis of an assignment of errors concerning matters transpiring in the course of a trial is a bill of exceptions signed by the trial judge.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 1432.]

2. EVIDENCE—OPINION EVIDENCE—SPEED OF AUTOMOBILE.

It is competent for any ordinary witness to express an opinion as to the speed an automobile was making at a given time, which is not, strictly speaking, a scientific inquiry, the weight of such opinion being for the jury.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2270.]

3. SAME—COMPETENCY—RESULTS OF EXPERIMENTS.

Testimony as to the comparative amount of noise made by different makes of automobiles, based on comparisons made by the witness, was properly excluded where there was no proof of the condition of the machines with which the test was made.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2292.]

4. SAME—PHOTOGRAPHS.

Photographs of a place, if admitted in evidence, are but secondary evidence of the conditions existing at the time they were taken, and are not admissible, if objected to, without preliminary proof that they are correct and truthful representations of their originals.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1657.]

5. APPEAL AND ERROR—REVIEW OF CHARGE—EXCEPTIONS.

An exception to a charge cannot be sustained which fails to call the attention of the court to its particular infirmity.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 1621.]

6. TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS.

A request to charge the jury to disregard the testimony of certain witnesses relating to a particular subject is equivalent to a motion to strike out all such testimony, and is properly refused, if any of it was admissible or not objected to.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 660.]

In Error to Circuit Court of the United States for the District of New Jersey.

Edward J. Fox, James Buchanan and James W. Fox, for plaintiff in error.   Joseph M. Roseberry, for defendants in error.

Before DALLAS and GRAY, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge.   This is an accident case.   The plaintiffs (the defendants in error in this court) brought suit against the defendant (the plaintiff in error here) to recover for personal injuries sustained by the plaintiff Emaline Buckley, and for damages sustained by Samuel S. Buckley, the other plaintiff and husband of Emaline Buckley, by reason of the defendant's alleged negligence. The plaintiffs aver that the accident was caused by the reckless

management of an automobile driven by the defendant on the public road between Allamuchy and Hackettstown, N. J., which frightened the plaintiffs' horse and led to the overturning of their carriage. A joint action by husband and wife in such a case is authorized by section 21 of the New Jersey Practice Act (P. L. 1903, p. 540) which is as follows:

"In an action by a husband and wife for an injury done to the wife in respect of which she is necessarily joined as coplaintiff, the husband may add thereto claims in his own right arising ex delicto, and separate actions brought in respect to such claims may by order of the court or a judge be consolidated; provided, in case of the death of either plaintiff, such action shall abate only so far as relates to the cause or causes of action, if any, which do not survive."

The jury rendered a verdict of $3,000 in favor of the wife and $700 in favor of the husband.

In the first and second assignments of error the defendant contends that the trial court erred in admitting in evidence, over the defendant's objections, certain testimony of Julia C. Thomas, a witness for the plaintiffs, relating to the speed of the automobile. The evidence objected to is quoted in the first assignment, and consists of a number of questions with the answers thereto. The printed record shows that several objections were made by the defendant's counsel to these questions and that the objections were overruled. But the only exception taken to the rulings, or signed by the trial judge, was to the question, "About how fast was this automobile going as near as you can tell?" It is a familiar rule of practice that the basis of an assignment of errors concerning matters transpiring in the course of a trial is a bill of exceptions signed by the trial judge. U. S. Rev. St. § 953 [U. S. Comp. St. p. 696]; Metropolitan R. Co. v. District of Columbia, 195 U. S. 329, 25 Sup. Ct. 28, 49 L. Ed. 219; Clune v. United States, 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269; Lincoln Savings Bank v. Allen, 82 Fed. 150, 27 C. C. A. 87; Monarch Cycle Manufacturing Co. v. Roger Wheel Co., 105 Fed. 324, 44 C. C. A. 523; Consolidated Coal Co. v. Polar Wave Ice Co., 106 Fed. 798, 45 C. C. A. 638. The first assignment, therefore, brings nothing before us except the single question, above quoted, to the allowance of which an exception was duly taken. The contention of the counsel for the defendant is that the question called for an expert opinion by a witness not qualified to give it. In Detroit & Milwaukee R. R. Co. v. Van Steinburg, 17 Mich. 104, Chief Justice Cooley said:

"The motion of the train was to be compared to the motion of any other moving thing, with a view to obtaining the judgment of the witness as to its velocity. No question of science was involved beyond what would have been had the passing object been a man or a horse. It was not, therefore, a question for experts. Any intelligent man, who had been accustomed to observe moving objects, would be able to express an opinion of some value upon it the first time he saw a train in motion. The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with timepiece in hand, the motion of an object of such size and momentum: but this would only go to the weight of the testimony and not to its admissibility. Any man possessing a knowledge of time and of distances would be competent to express an opinion upon the subject."

Rogers on Expert Testimony (2d Ed.) p. 244, says:

"Questions as to the speed with which trains were moving are not, strictly speaking, scientific inquiries, but any man possessing a knowledge of time and distances is usually competent to express an opinion on that subject."

Lawson on Expert and Opinion Evidence (2d Ed.) p. 505, gives the following rule:

"The opinions of ordinary witnesses derived from observation are admissible in evidence when, from the nature of the subject under investigation, no better evidence can be obtained, or the facts cannot otherwise be presented to the tribunal, e. g., questions relating to time, quantity, number, dimensions, height, speed, distance, or the like."

The same rule is given in 6 Thomp. Neg. § 7754, and in other authorities that might be cited. Applying to the case in hand this rule, which we think is supported by the best authorities, we find that Mrs. Thomas testified that she had witnessed horse races and, on several occasions, had timed express trains running through Hackettstown and Rutherford, N. J., that she had never seen anything go so fast on the public highway as the defendant's automobile, and that she should judge it was going "at the rate of 40 or 50 miles an hour as the express goes through town." It thus appears that if it was necessary that her opinion concerning the speed of the automobile should be authenticated by proof that she had previously observed the speed of moving objects, that proof was furnished. The weight of her opinion was a question wholly for the jury.

The third and fourth assignments relate to the exclusion of the proffered testimony of Thomas H. Throp as to the comparative noises made by a Winton car, of the type used by the defendant at the time of the accident, and other machines, and to striking out the testimony given by him to the effect that he had made such comparisons. The testimony offered was properly excluded. While Mr. Throp testified that he had made such comparisons, there was no proof of the condition of the machines with which the comparisons were made. In view of these facts, his testimony that he had compared the noise made by a Winton car with the noises made by other machines was immaterial, and was properly stricken out.

The fifth assignment relates to the exclusion of certain photographs of the place where the accident occurred taken by Louis A. Francisco. The accident occurred on September 11, 1904. Mr. Francisco testified that he is a civil engineer, that he had had some experience as a photographer in connection with his professional work, and that he took the photographs produced by him on October 24, 1905. He was then asked this question: "Do they correctly represent the location as you found it when you were there in October of this year?" He answered that they did. The photographs, without other preliminary proof, were then offered in evidence by the defendant, objected to by the plaintiffs, and excluded by the court. Photographs are often admitted in evidence for illustrative purposes, because courts take judicial cognizance of the fact that a photograph is a light-printed picture produced by

the operation of natural laws, and not by the hand of man. But courts also know that photography is an art, and that in the hands of inexperienced or interested persons photographs may be made to misrepresent their originals. For this reason they are not admissible in evidence, if objected to, unless they have been duly verified by preliminary proofs as correct and truthful representations of their originals. In the present case the jury, amongst other things, were required to investigate the conditions, on September 11, 1901, of the place where the accident occurred. If, during the trial, the jury had been permitted to view the place, they would have had before them primary evidence of its conditions at the time of the view. Photographs of the place, if admitted, would have been but secondary evidence of the conditions at the time they were taken. When it is proposed to prove the contents of a lost instrument by secondary evidence the proof of loss is a matter preliminary to the admission of the secondary evidence, and the question of its sufficiency is for the court. The New Jersey rule is that if the decision of the trial judge upon the sufficiency of the proof of loss is liable to review on a writ of error, the onus is upon the plaintiff in error of showing that the decision was erroneous, and there will be no reversal unless it clearly appears that the court below was in error and injustice was done by the erroneous decision. Johnson v. Arnwine, 42 N. J. Law, 451, 36 Am. Rep. 527; Voorhis v. Terhune, 50 N. J. Law, 159, 13 Atl. 391, 7 Am. St. Rep. 781; Longstreth v. Korb, 64 N. J. Law, 115, 44 Atl. 934; Koehler v. Schilling, 70 N. J. Law, 586, 57 Atl. 154. We think the same general principles are controlling when a photograph of a place is offered as secondary evidence. In Goldsboro v. Central R. Co., 60 N. J. Law, 51, 37 Atl. 433, the Supreme Court of New Jersey said:

"As evidence, photographs have been held admissible upon the question of identity and comparison of handwriting, and as secondary evidence when the primary and better evidence could not be obtained. It may be generally regarded as a rule that they are never admitted but as secondary evidence. They have been admitted to show the condition and identity of premises. There are many illustrations in the cases of the admissibility of such evidence. But they are not admissible unless authenticated by other evidence that they are correct resemblances or truthful representations."

In the case in hand, after the defendant had offered the very meager preliminary proof referred to, and on objection of the counsel for the plaintiffs, the court excluded the photographs. The counsel for the defendant then said that he proposed to show that the conditions existing at the time the photographs were taken were the same as those existing at the time of the accident. He did not state what those conditions were. Seven photographs were offered, not separately but collectively. Four of them show an automobile standing in the road. One of them contains the picture of a man standing in the road, and being one of the most prominent objects in the photograph. Another contains the pictures of two men standing in the grass or weeds on the side of the road at or near the point where the plaintiffs' carriage was overturned. Why these men were placed in these conspicuous places within the field of the

camera was not explained. Each of the seven photographs, furthermore, shows many conditions not material to the issue. A mere inspection of the photographs shows conclusively that it was impossible to prove that all the conditions disclosed by them existed at the time of the accident. As no information was imparted to the court concerning the particular conditions which the defendant proposed to show, the court was fully warranted in saying, as he did, that he excluded the photographs on the ground that they were taken more than a year after the accident, and disclosed conditions which could not be proved to have been the same when the photographs were taken as they were at the time of the accident.

The sixth and seventh assignments were withdrawn by the defendant at the time of the oral argument.

The eighth assignment relates to the refusal of the trial court to charge the defendant's request that:

.' "If the jury believed from the evidence that at the time of the accident the defendant was not operating his automobile at a high rate of speed, and. that it was not in consequence of any such high rate of speed of the automobile, together. with the noise emanating therefrom, that the horse of the plaintiff, Samuel S. Buckley, became frightened and caused the injuries to the plaintiff, then there was no negligence on the part of the defendant, and the jury should render a verdict in his favor."

This request was too narrow. If charged, it would have excluded the jury from the consideration of other elements than speed and noise. For example, in the fourth count of the declaration the plaintiffs aver that the defendant not only operated his automobile at great speed and with noise, but that "the said defendant did not then and there take reasonable care, after frightening said horse as aforesaid, to look out and see the peril of the said plaintiff, Emaline Buckley, by reason of the fright of said horse, and did not then and there do what he could, in the management of said motor vehicle, to diminish the fright of said horse," etc. There is evidence in the case tending to support this count of the declaration. The refusal to charge as requested was therefore correct.

The ninth assignment relates to the refusal of the court to charge the defendant's request that:

"Upon all the evidence the jury should render a verdict for the defendant, upon the ground that there is no proof of negligence on the part of the defendant, and also upon the ground that the injuries sustained by the plaintiffs were occasioned on account of their contributory negligence."

The evidence shows that Mrs. Buckley was thrown out of the carriage as it passed over an embankment about two feet high on the side of the road. The plaintiffs insisted that the horse became frightened and ungovernable, and that in spite of the efforts of Mr. Buckley, who held the reins, the horse sheered to the side of the road, carried the vehicle over the embankment, ran into a wire fence where he got one of his legs between the wires, and then, withdrawing his leg from that position, ran across the road to the opposite fence, Mr. Buckley meanwhile holding fast to the reins. And the defendant insisted that before the automobile had passed the plaintiffs, Mr. Buckley was whipping his horse, .

and that the accident was wholly due to the negligent and unskillful management of the horse by Mr. Buckley. On both of these points there was conflicting evidence, and on both of them the charge of the court was singularly fair to the defendant. There would have been palpable error in charging upon either of these points as requested by the defendant.

The tenth assignment was withdrawn by the defendant on the oral argument.

The eleventh assignment is:

"That the court erred in using the following language in the charge to the jury: 'There is a statute in this state which prescribes that at a prominent crossroad automobiles shall not exceed a speed limit of 6 miles per hour. That statute has no reference to this case, gentlemen, unless you shall find that that crossing was a prominent crossing. Now "prominent" means something standing out from the ordinary. A prominent crossing is a chief crossing—a leading crossing. Is this such a crossing? You have heard the evidence in this case. You have heard as to how much that road is traveled and all the evidence concerning it, and it is for you to say as a fact from the evidence in this case whether that is a prominent crossing—more prominent than the ordinary crossing. If it was, then you may consider a violation of this statute as a circumstance in the case tending to show the negligence of the defendant. If it was not a prominent crossing, then the speed limit as fixed by the statute is 20 miles an hour. Now, gentlemen, that statute comes up for your consideration in the manner I have stated. If it is a prominent crossing, the speed limit is fixed at 6 miles per hour. If it is not a prominent crossing, the speed limit is fixed at 20 miles per hour. You should only consider a violation of the speed rate of that statute in connection with any evidence in the case tending to show negligence on the part of the defendant. It is only a circumstance to be considered by you.'"

By the statute of New Jersey referred to in this language (P. L. 1903, p. 81, § 5) it is declared that the speed of a motor vehicle on any public highway shall be limited to "one mile in six minutes upon the sharp curves of a street or highway and at the intersection of prominent crossroads where such street, road or highway passes through the open country, meaning thereby portions of a town, township, borough or village where houses are more than one hundred feet apart."

The Allamuchy Road, on which the defendant was driving his automobile, is macadamized. The evidence shows that it is much used, and we do not understand that even the defendant denies that it is a prominent road. The other—the Petersburg or Budd's Lake Road, which crosses the Allamuchy Road at the place where the accident occurred—is not so much used. The evidence satisfies us that it is a cross-country road and by no means a prominent one. It will be observed that the statute speaks of "the intersection of prominent crossroads" and not of a "prominent crossing." Assuming that the Allamuchy Road is a prominent one and that the Petersburg or Budd's Lake Road is not, the intersection of the two roads is not "the intersection of prominent crossroads." In the charge the court failed to observe the exact phraseology of the statute. But so did counsel for the defendant. After the charge was finished the counsel for the defendant said:

147 F.—10

"I beg leave to note an exception to so much of the charge as relates to the applicability of the automobile act of 1903. Your honor said that the jury should say whether the crossing from the Budd's Lake Road was a prominent crossing."

The court then said:

"Do you want me to charge that it was a prominent crossing?"

To this inquiry the counsel answered:

"My objection is that there is nothing in the case to sustain or warrant the inference that it is a prominent crossing, where this accident occurred."

An exception to evidence cannot be sustained that fails to call the attention of the court to its particular infirmity. This is a salutary rule designed to promote the administration of justice. Allaire v. Allaire, 39 N. J. Law, 116; Noonan v. Caledonia Mining Co., 121 U. S. 400, 7 Sup. Ct. 911, 30 L. Ed. 1061. The reason underlying it is equally applicable to an exception to a refusal of a trial judge to grant a nonsuit or to his charge to the jury. If the particular error above mentioned had been pointed out to the court at the close of the charge it would doubtless have been immediately corrected. It would be as competent for us to sustain this assignment on the ground that the trial court made the slip of telling the jury that the New Jersey statute prescribes a speed limit of 6 miles an hour instead of a mile in 6 minutes, or 10 miles an hour, notwithstanding no exception to that error was taken, as to sustain it on the exception that in fact was taken.

The twelfth assignment is that:

"The court erred in refusing to charge the jury to disregard the testimony of the following witnesses, namely, Emaline Buckley, Samuel S. Buckley, and Julia C. Thomas upon the subject of the rate of speed at which the automobile of the defendant was running at the time of the accident."

While some of the evidence of Emaline Buckley appears to have been objected to, no exception was taken. Samuel S. Buckley testified on the subject of speed both on his direct and cross-examinations, and not only was no exception taken to any part of his testimony on that subject, but no objection to it was made. The testimony of Julia C. Thomas was properly admitted as stated above in considering the first assignment. The request to charge contained in this assignment was equivalent to a motion to strike out all the testimony of these witnesses relating to the subject of speed. It was properly refused because a portion at least of the testimony was competent and relevant, and also because a portion of it was not objected to when offered. American Express Co. v. Lankford, 93 Fed. 380, 35 C. C. A. 353; Farmers' & Traders' Nat. Bank v. Greene, 74 Fed. 441, 20 C. C. A. 500; Benson v. United States, 146 U. S. 332, 13 Sup. Ct. 60, 36 L. Ed. 991.

The thirteenth assignment is that:

"The court erred in refusing the motion of defendant to direct a verdict in favor of the defendant," and the fourteenth and last assignment is that "the court erred in entering judgment in favor of the plaintiffs and against the defendant."

The objections presented by these assignments have already been sufficiently answered. The case was one of fact for the jury. The judgment of the circuit court is affirmed, with costs.